UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP,<br><br>                      Plaintiff,<br>    v.<br>RAINBOW BEND HONEOWNERS ASSOCIATION; PHIL FRINK & ASSOCIATES, INC.; DANIEL HALL; AND DIANA HALL,<br><br>                      Defendants. | Case No. 3:17-cv-00049-MMD-WGC<br><br>ORDER |

**I.    SUMMARY**

This dispute arises from the foreclosure sale ("HOA Sale") of real property located at 301 Rue de la Fauve, Sparks, Nevada 89434-9539 ("Property") to satisfy a homeowners' association lien. Two motions are currently pending before the Court. Defendants Daniel Hall and Diana Hall ("Purchasers") move for summary judgment on Plaintiff Bank of America, N.A.'s ("BANA") claims against them. (ECF No. 53.)[1] BANA has also moved for summary judgment on its quiet title/declaratory judgment claim against Rainbow Bend Homeowners Association ("HOA") and Purchasers. (ECF No. 54 at 1.)

For the reasons stated below, the Court declines to grant summary judgment in favor of either Purchasers or BANA on BANA's claim for quiet title/declaratory judgment

///

///

---

[1]As discussed *infra*, to the extent Purchasers move from summary judgment on claims BANA did not allege against them Purchasers lack standing.

and therefore denies BANA's motion.[2] Consequently, the Court also denies Purchasers' motion as to BANA's claim for injunctive relief.

## II.     BACKGROUND

The following facts are undisputed unless otherwise indicated.

E. Louis Komberec and Karen Rae Hunter-Komberec ("Borrowers") financed the purchase of the Property within the HOA with a $160,319.00 loan ("Loan") in June 2009. (ECF No. 54-1.) The Loan was secured by a first deed of trust ("DOT"). (*See id.*) MERS assigned the DOT to BAC Home Loans Servicing, LP, fka Countrywide Home Loans Servicing LP ("BAC") via an assignment recorded on May 6, 2010. (ECF No. 54-2.) BAC merged into and with BANA effective July 1, 2011—thus the DOT was assigned to BANA. (ECF No. 54-3.) BANA remains the beneficiary of the DOT.

Borrowers failed to pay HOA assessments, and the HOA recorded the following notices through its agents, Gayle A. Kern, Ltd. d/b/a Kern & Associates, Ltd. ("Kern") and Phil Frink & Associates, Inc. ("Frink"): (1) notice of delinquent assessment lien on June 2, 2010, noting that $2,143.72 remained unpaid as of May 21, 2010 (ECF No. 54-4); and (2) notice of default and election to sell on November 3, 2010, providing that $3,057.00 was due to the HOA (ECF No. 54-5).

Between February 2010 and November 2011, Borrowers made payments to the HOA, totaling $1,975.00. (ECF No. 54-8 at 6; ECF Nos. 54-7, 54-9 (HOA's ledgers).) The HOA proceeded with its HOA Sale. The HOA, through Frink, recorded a notice of HOA Sale on December 18, 2012, providing that an estimated $6,059.36 and other charges were due. (ECF No. 54-6.) This notice provided that the HOA Sale would take place on January 15, 2013. (*Id.*)

On January 10, 2013, BANA's agent (the law firm of Miles, Bauer, Bergstrom & Winters, LLP ("Miles Bauer")) sent a letter to Frink asking Frink to identify the superpriority

---

[2]The Court has also considered the parties' accompanying responses (ECF Nos. 56, 58, 62) and replies (ECF No. 63, 64).

2

amount of the HOA lien and offering to pay that amount "whatever it is".[3] (ECF No. 54-10.) Miles Bauer did not receive a response from Frink. (*Id.* at 3.) The HOA purchased the Property at its own HOA Sale on January 15, 2013, for $700. The Property was transferred to Purchasers by quit claim deed on December 10, 2014. (ECF No. 54-13.)

In its FAC, BANA asserts the following claims: (1) quiet title/declaratory judgment against all Defendants; (2) breach of NRS § 116.1113 against the HOA and Frink; (3) wrongful foreclosure against the HOA and Frink; and (4) injunctive relief against Purchasers. (ECF No. 1 at 6–15.) In the prayer for relief, BANA primarily requests an order declaring Purchasers took the Property subject to BANA's DOT. (*Id.* at 15.) Further, BANA's second and third claims against the HOA and Frink are stated in alternative to BANA's request for declaratory judgment. (*Id.*)

Frink has been dismissed, without prejudice, from this action. (ECF No. 61.)

### III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the

///

---

[3] BANA offers the affidavit of Douglas E. Miles ("Douglas Affidavit"), a managing partner with Miles Bauer, who authenticated Miles Bauer's business records and explained the information contained within Miles Bauer's records attached to his affidavit. (ECF No. 54-10 at 2–3.)

3

motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Moreover, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted) (quoting William W. Schwarzer, *et al.*, The Analysis and Decision of Summary Judgment Motions, 139 F.R.D. 441, 499 (Feb. 1992)). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

**IV. DISCUSSION**

The Court first addresses preliminary contentions the HOA and Purchasers make before addressing the merits of the parties' arguments.

**A. Standing and Statute of Limitations**

**1. Standing**

Purchasers contend that BANA lacks standings to do the following: (1) argue that BANA's DOT is not extinguished because it is protected by the Supremacy Clause as BANA's note and DOT are insured by the Federal Housing Administration ("FHA") under the Department of Housing and Urban Development ("HUD") (ECF No. 1 at 4, 7, 9); and (2) assert a quiet title claim against Purchasers because BANA cannot establish causation or redressability. (ECF No. 53 at 10–11.) As to the latter, Purchasers argue that

4

Borrrowers' failure to pay HOA assessments caused BANA's injury and the injury cannot be redressed by "unwinding the [HOA Sale]." (*Id.* at 11.)[4] Purchasers further posit that BANA's quiet title action cannot be maintained because BANA cannot establish good title and holds only a security interest. (*Id.* at 12.) The Court deems this latter argument to also be a challenge to BANA's standing to bring its quiet title claim.

In response, BANA concedes that its FHA/HUD argument is foreclosed by the Ninth Circuit decision in *Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n ("Twilight")*, 920 F.3d 620 (9th Cir. 2019). (ECF No. 62 at 2 n.1.) BANA also argues, *inter alia*, that it has standing to bring its quiet title claim against Purchasers—as adverse parties—because it is the current holder of the DOT. (*Id.* at 7.)

The Court accepts BANA's concession and also agrees that BANA has standing to bring its quiet title/declaratory relief claim against Purchasers. *See, e.g.*, *PennyMac Loan Serv. LLC v. Townhouse Greens Ass'n, Inc.*, No. 3:16-cv-00504-MMD-VPC, 2018 WL 772089, at **2–3 (D. Nev. Feb. 6, 2018) (finding standing because it is alleged that there is injury "by the extinguishment of the DOT and a decision from this Court quieting title to it would redress that injury"); *see also Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 106 F. Supp. 3d 1174, 1179 (D. Nev. 2015) (internal quotation and citation omitted) (explaining that prudential standing "encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked").

///

///

---

[4]To the extent Purchasers argue that the Court should find Borrowers to be necessary parties to this action (ECF No. 53 at 23–26), the Court rejects the argument. The Court can enter judgment for any of the current parties without Borrowers being named to this action. As BANA notes: "BANA seeks no relief from its borrowers, and the mere fact that BANA might have a theoretical contract remedy against the borrowers under the deed of trust does not mean it cannot seek relief to enforce that contract against the current titleholders." (ECF No. 62 at 8.)

### 2. Statute of Limitations

The HOA contends it is entitled to summary judgment on BANA's second and third causes of action for wrongful foreclosure and violation of NRS § 116.1113, *et seq.* because those claims are time barred under applicable statute of limitations. (ECF No. 58 at 8–14.) The HOA did not file a dispositive motion on those claims and BANA did not move for summary judgment on these issues. Purchasers also argue that the wrongful foreclosure claim is time-barred even though the claim is not asserted against Purchasers. (ECF No. 53 at 20 & n.5.) In response, BANA highlights that Purchasers lack standing to argue claims not asserted against them and that because the HOA failed to separately move for summary judgment, the issues are not properly before the Court (ECF No. 63 at 10–11; ECF No. 62 at 6; ECF No. 54 at 3 n.1 (explaining BANA is not moving for summary judgment on its second and third claims).)

The Court agrees with BANA that Purchasers lack standing to argue a claim not asserted against them. The Court further agrees that the HOA's opposition to BANA's motion for summary judgment is not an appropriate vehicle for seeking affirmative relief on BANA's second and third claims because those claims are not at issue here. The Court therefore declines to address the parties' statute of limitations arguments regarding BANA's second and third claims.

### B. Merits

Purchasers argue that they are entitled to summary judgment on BANA's quiet title/declaratory judgment claim because the HOA Sale was valid and extinguished BANA's DOT. (*See, e.g.*, ECF No. 53 at 25.)

In analyzing the merits of the parties' arguments, the Court presumes that the HOA Sale extinguished the DOT and that Purchasers thus own the Property free and clear of the DOT. *See Wells Fargo Bank, N.A. v. SFR Invs. Pool 1, LLC*, No. 3:15-cv-00240-MMD-CBC, 2019 WL 470901, at *3 (D. Nev. Feb. 6, 2019) (citing *SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408, 419 (Nev. 2014)). To rebut this presumption, BANA argues, *inter alia*: (1) Borrowers made sufficient tender to satisfy the superpriority portion of the

6

HOA's lien; (2) BANA was excused from providing tender to preserve the DOT; (3) NRS § 116.3116 is unconstitutional—as applied;[5] and (4) equitable relief is warranted to set aside or reform the HOA Sale.[6] (ECF No. 62 at & n.1.) The Court addresses BANA's arguments and finds an issue of material fact as to whether Borrowers' payments to the HOA were applied to the superpriority portion of the HOA's lien so as to protect BANA's DOT from extinguishment.

### 1. Tender

BANA's tender argument is two-fold.[7] BANA argues that either Borrowers paid the superpriority amount of the HOA's lien, or alternatively, BANA was excused from having to make tender to satisfy the superpriority portion of the HOA's lien because sending a check in an amount to satisfy the superpriority lien amount would have been futile. (ECF No. 54 at 6–12; ECF No. 62 at 3–5; ECF No. 63 at 3–7.)[8]

The Nevada Supreme Court has made clear the law concerning tender. For example, in *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113 (Nev.), *as amended on denial of reh'g* (Nov. 13, 2018), the Nevada Supreme Court held "[a] valid tender of payment operates to discharge a lien or cure a default." *Id.* at 117, 121. And it reaffirmed "that the superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments." *Id.* at 117. More recently, the Nevada Supreme Court held that an offer to pay the superpriority amount coupled with
///

---

[5]BANA also conceded that its contention that NRS § 116.3116 is facially unconstitutional is no longer viable. (ECF No. 62 at 2 n.1.)

[6]The relevance of arguments regarding Purchasers' status as a bona fide purchaser (*E.g.*, ECF No. 62 at 2, 7–8; ECF No. 56 at 10) will depend on whether the HOA Sale extinguished BANA's DOT.

[7]The Court rejects Purchasers' argument that BANA's tender argument is "a disguised wrongful foreclosure claim, which is subject to a 4-year (at the most) statute of limitations." (ECF No. 56 at 12.)

[8]While in its motion BANA argued that its offer letter to pay a yet-to-be determined amount constituted valid tender, BANA appears to have dropped that argument in light of its later briefing focusing on the issue of futility under *Bank of Am., N.A. v. Thomas Jessup, LLC Series VII ("Jessup")*, 435 P.3d 1217 (Nev. 2019), discussed *infra*.

a rejection of that offer discharges the superpriority portion of the HOA's lien, even if no money changed hands. *See Bank of Am., N.A. v. Thomas Jessup, LLC Series VII ("Jessup")*, 435 P.3d 1217, 1218 (Nev. 2019). Even more recently, the Ninth Circuit weighed in to confirm the Nevada Supreme Court had settled this issue—"the holder of the first deed of trust can establish the superpriority of its interest by showing that its tender satisfied the superpriority portion of the HOA's lien," which "consists of nine months of unpaid HOA dues and any unpaid charges for maintenance and nuisance abatement." *Twilight*, 920 F.3d at 623.

### a. Borrowers' Payments to the HOA

In response to BANA's first contention, Purchasers argue that BANA cannot establish that Borrowers' payments were assessed against the superpriority component of the HOA's lien. (ECF No. 56 at 4–5.) The Court finds that while BANA does not provide undisputed evidence that Borrowers' payments to the HOA were applied in satisfaction of the superpriority portion of the HOA lien, Purchasers also fail to foreclose the issue—that the payments were not applied in accord. Accordingly, neither party is entitled to summary judgment.

The Nevada Supreme Court has held that an HOA's superpriority lien may be discharged by a homeowner's tender of the full superpriority amount. *See Saticoy Bay LLC v. JPMorgan Chase Bank*, No. 71246, 408 P.3d 558 (Table), 2017 WL 6597154, at *1 (Nev. 2017) (unpublished). However, in *Saticoy Bay LLC*, there was "undisputed evidence that the former homeowner made payments sufficient to satisfy the superpriority component of the HOA's lien and that the HOA applied those payment to the superpriority component of the former homeowner's outstanding balance." *Id.* While it is uncontested that Borrowers made several payments to the HOA between February 2010 and November 2011 (ECF No. 54-8 at 6) there is no evidence regarding how those payments were applied against the debt Borrowers owed the HOA during that time period. Notably, the notice of delinquent assessment lien on June 2, 2010, provided that $2,143.72 *remained unpaid* as of May 21, 2010. By November 3, 2011, the HOA reported

that $3,057.00 was then owing (ECF No. 54-5) and the total of Borrowers' payments to the HOA's agent amounted to an estimated "1,975" (ECF No. 54-8 at 6). Further, during the period of Borrowers' payments the monthly assessments accrued at a rate of $91 each month. (ECF No. 54-8 at 6; ECF No. 54-7 at 4; ECF No. 54-9.) The HOA representative's only relevant deposition testimony was that payments received from Borrowers were applied to "anything" owing at the time—"[s]o assessments, late fees, collections costs. That kind of thing." (ECF No. 54-8 at 6.) Without evidence indicating the order in which Borrowers' payments were applied, the Court has nothing to support an inference that Borrowers' payments covered—or even reached—the superpriority portion of the HOA's lien. Nor is it supported that the payments were not applied to the same.

In sum, the Court finds that a disputed issue of fact exists as to whether Borrowers' payments were applied against the superpriority portion of the HOA's lien (i.e., nine months of dues and any noted unpaid charges for maintenance and nuisance abatement), but not late fees and collection costs. Accordingly, both parties' motions for summary judgment fail.

### b. BANA's Futility Argument

The Court rejects BANA's futility argument.

BANA makes clear that it offered to pay the superpriortiy amount—via its letter, through Miles Bauer, to Frink, but never actually made payment, and never received any response from Frink. (*See, e.g.*, ECF No. 62 at 3–5.) Nonetheless, BANA contends that it was excused from any obligation to tender payment under *Jessup* because Kern or Frink would have rejected any tender of payment. (*Id.*) In support of this position, BANA argues and provides declaration from an attorney who was a Miles Bauer's associate during the period relevant to the HOA Sale. (*Id.*; ECF No. 62-1.) The declaration is provided to support the contention that the HOA's agents—Frink and Kern—had a policy or practice of rejecting tender based on evidence from Miles Bauer's dealings with these agents in other cases and therefore any payment to these agents would have been futile. (ECF No. 62-1; ECF No. 62 at 4–5 (citing to *Jessup* and arguing that "[s]ending a check was futile,

so it was excused, and the deed of trust survives").) The Court considers the policy argument only as to Frink because the record supports only that Miles Bauer sent a letter to Frink—not also to Kern (ECF No. 54-10).

BANA's argument is unsupported by *Jessup* and would instead extend that decision beyond the Nevada Supreme Court's actual ruling. In *Jessup*, the Nevada Supreme Court found that a mortgage lender was excused from the obligation to tender payment when the homeowners' association's agent essentially stated that it would reject any tender it received. 435 P.3d at 1220. Although the agent's letter "did not explicitly state that it would reject a superpriority tender," the court found that was the only reasonable construction of the letter received in response from the HOA because the letter asserted that the lender could not tender the superpriority amount prior to foreclosure. *Id.* The court additionally relied on trial testimony that confirmed the agent would have rejected a tender that included a "paid in full" condition. *Id.*

The Court concludes that the absence of a response from Frink cannot be read as a rejection to BANA's letter offering to pay the yet-to-be-determined superpriority portion of the HOA's lien. In the absence of evidence tantamount to an actual rejection by the HOA, BANA's argument does not fall within the purview of *Jessup*. Furthermore, BANA cites to no authority to support the conclusion that a declaration from a Miles Bauer associate regarding what Frink did on other occasions is sufficient to establish that the HOA had a policy or practice of rejecting tender *and* thus tender would have been futile in this case. Surely, BANA cannot establish that Frink *never* accepted payments of the superpriority portion of an HOA's lien from the holder of the first security interest.

### 2. Constitutionality of NRS § 116.3116

The Court rejects BANA's argument that NRS § 116.3116 is unconstitutional as applied (ECF No. 54 at 16–18; ECF No. 62 at 2 n.1) based on this Court's reasoning in *Bank of N.Y. Mellon v. Log Cabin Manor Homeowners Ass'n*, 362 F. Supp. 3d 930, 937 (D. Nev. 2019); *see also SFR Invs. Pool 1, LLC*, 334 P.3d at 418 (concluding that listing

///

the entire amount due and owing at the time of recordation satisfied the requirement of reasonably calculated notice).

### 3. Equitable Relief

Finally, BANA contends that equitable relief is warranted under *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon ("Shadow Canyon")*, 405 P.3d 641, 643, 648 (Nev. 2017). Although the Court finds BANA's equitable arguments lacking, the Court defers ruling on whether to grant equitable relief.

The Nevada Supreme Court has held that "courts retain the power to grant equitable relief from a defective foreclosure sale." *Shadow Wood Homeowners Ass'n v. New York Cmty. Bancorp. ("Shadow Wood")*, 366 P.3d 1105, 1110 (Nev. 2016). For instance, a court may set aside a sale where there is inadequacy of price as well as proof of slight evidence of fraud, unfairness, or oppression. *Shadow Canyon*, 405 P.3d at 643 (also stating inadequacy of price "should be considered with any alleged irregularities in the sale process to determine whether the sale was affected by fraud, unfairness, or oppression").

Aside from the adequacy of the sale price—$700, BANA has failed to demonstrate fraud, unfairness or oppression. (*See* ECF No. 54 at 18–20.) BANA argues the following establishes unfairness in the HOA Sale: (1) the HOA represented in its Declaration of Covenants, Conditions, and Restrictions ("CC&Rs") that the foreclosure sale would not extinguish the DOT (ECF No. 54-11 at 52 (§ 9.4)) and the HOA made no effort to correct the disclaimer; (2) BANA attempted to tender and the HOA, through Frink,[9] prevented BANA from satisfying the superpriority lien amount, by not specifying that amount despite the HOA's CC&Rs stating the HOA would provide the amount upon request (*id.* at 46, 52–53, §§ 6.9, 9.5, 9.8); and (3) the parties faced massive legal uncertainty when the HOA foreclosed and therefore the noted representation in the CC&Rs chilled bidding and

///

---

[9]In its response to Purchasers' motion, BANA argues that Kern refused to provide the information requested by the Miles Bauer letter (*see, e.g.*, ECF No. 62 at 3–5), but again, the record supports only that Miles Bauer sent a letter to Frink (ECF No. 54-10).

depressed the sale price and amounted to affirmative misrepresentation. (ECF No. 54 at 18–20.)

In turn, Purchasers argue that NRS § 116 may not be varied by CC&Rs, BANA feigns "legal uncertainty" because the Miles Bauer letter acknowledges the superiority status of the HOA's lien and the uncertainty applied to all parties, and BANA's chilling argument is meritless. (ECF No. 56 at 13–14.) Purchasers additionally argues that BANA's argument is unavailing to the extent BANA argues the HOA did not respond to the Miles Bauer letter. (*Id.* at 14.)

BANA's arguments of unfairness are unpersuasive to the extent BANA relies on the CC&Rs, argues bid chilling[10] or depressed sale price, and contends that the HOA prevented it from satisfying the superpriority lien by not specifying that amount. *See, e.g.*, *Nationstar Mortg. LLC v. Summit Hills Homeowners Ass'n ("Summit Hills")*, No. 2:16-cv-01637-MMD-GWF, 2019 WL 2453645, at *4–5 (D. Nev. June 12, 2019) (addressing these issues). Furthermore, at the time of the HOA Sale, NRS § 116.3116 did not require that the notices sent to BANA specifically state that the HOA sought to foreclose on the superpriority portion of its lien.[11] *See Bank of Am., N.A. v. 583SC LLC*, 408 P.3d 548 (Table) n.1, 2017 WL 6542454, at *1 n.1 (Nev. 2017).

Additionally, the Court agrees with Purchasers that an atmosphere of legal uncertainty does not establish unfairness where all parties faced the same uncertainty. *Nationstar Mortg. LLC v. Highland Ranch Homeowners Ass'n*, No. 3:15-cv-00375-MMD-

///

---

[10] *See JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC*, 433 P.3d 263 (Table), 2019 WL 292823, at *1 (Nev. 2019) (unpublished) providing:

> [A]ppellant has not presented any evidence that potential bidders were misled by the CC&Rs and that bidding was chilled. Moreover, we must presume that any such bidders also were aware of NRS 116.1104, such that there were not misled.

[11] The Nevada Supreme Court recently found that NRS § 116.31168 incorporates the mandatory notice provisions of NRS § 107.090, which requires notice of the time and place of the sale. *SFR Invs. Pool 1, LLC v. Bank of New York Mellon ("SFR II")*, 422 P.3d 1248, 1253 (Nev. 2018).

CBC, 2019 WL 1173339, at *2 (D. Nev. March 13, 2019). And, to the extent there was legal uncertainty, BANA had multiple means at its disposal to protect its DOT. *Shadow Wood*, 366 P.3d at 1114 (recognizing various means at the disposal of the first security interest holder to determine the superiority amount: "attend the sale, request arbitration to determine the amount owed, or seek to enjoin the sale pending judicial determination of amount owed"); *see also Nationstar Mortg., LLC v. Melvin Grp., LLC*, 422 P.3d 711 (Table), 2018 WL 3544972, at *2 (Nev. 2018) ("Absent evidence that the HOA or its agent affirmatively thwarted appellants' efforts to tender the superpriority amount, the alleged futility of any such effort does not establish unfairness or oppression."). No affirmative conduct by the HOA[12] precluded BANA from acting to protect its DOT.

Nonetheless, the Court concludes that whether equitable relief is warranted here will ultimately depend on whether the HOA chose not to apply Borrowers' payments first to the superpriority portion of the HOA's lien. Accordingly, the Court defers ruling on the matter until the issues pertaining to how Borrowers' payments were applied are resolved.

### 4. Injunctive Relief

Purchasers move for summary judgment on BANA's claim for injunctive relief against them. (ECF No. 53 at 21–23.) BANA's response to Purchasers' motion did not address the issue. (*See generally* ECF No. 62.) In any event, the Court declines to grant summary judgment on the claim because it is not a standalone claim[13] and the Court has not ruled in favor of either party on BANA's underlying quiet title claim for which there is a genuine dispute of material fact.

In sum, the Court finds that there is a genuine issue of material fact as to whether the HOA Sale extinguished BANA's DOT in light of Borrowers' payments to the HOA. The

///

---

[12]While the CC&Rs may be considered affirmative representations by the HOA, they are insufficient to establish unfairness. *See, e.g.*, *Summit Hills*, 2019 WL 2453645, at *5 (citing, *Bank of N.Y. Mellon v. SFR Invs. Pool 1, LLC*, No. 2:17-cv-00256-JCM-NJK, 2018 WL 1002611, at *8 (D. Nev. Feb. 21, 2018)).

[13]*See, e.g.*, *Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 F. App'x. 680, 684 (9th Cir. 2014).

Court rejects BANA's alternative futility of tender argument. The Court defers a final ruling on whether BANA is entitled to equitable relief under *Shadow Canyon*. Ultimately, the Court denies both parties' motion for summary judgment on BANA's quiet title/declaratory judgment claim. The Court also denies Purchasers' request for summary judgment on BANA's injunctive relief claim against them. The Court declines to rule on Purchasers and the HOA's arguments for summary judgment on BANA's second and third claims because Purchasers lack standing as to those claims and the HOA did not move on these issues which are not otherwise properly before the Court.

**V.     CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Purchasers' motion for summary judgment (ECF No. 53) is denied in accordance with this order.

It is further ordered that BANA's motion for summary judgment on its claim for quiet title/declaratory judgment claim (ECF No. 54) is denied.

It is further ordered that BANA's second and third claims also remain outstanding against the HOA because neither BANA nor the HOA has sought dispositive rulings on those matters.

DATED THIS 25th day of June 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE